UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEVEN MACNAIR | CIVIL ACTION |
| VERSUS | NO: 2:23-00761 |
| CHUBB EUROPEAN GROUP, SE | SECTION: T (2) |

## ORDER and REASONS

Before the Court are two motions to exclude the testimony of expert witnesses. Plaintiff has filed a Motion to Exclude the Testimony of George Coto, Jr., an expert witness to be called by Defendant Chubb European Group, SE. R. Doc. 45. Defendant has filed a Motion to Exclude the Testimony of Jeremy Belk, an expert to be called by Plaintiff. R. Doc. 47. Both sides have filed responses in opposition. *See* R. Docs. 54 and 56. Chubb filed a Reply in support of its Motion. R. Doc. 64.

BACKGROUND

This is an insurance coverage dispute arising out of damage Plaintiff's property allegedly sustained during Hurricane Ida, which made landfall on August 29, 2021. Plaintiff Deven MacNair owned immovable property on Belleville Street in New Orleans that was insured by a policy issued by Defendant Chubb European Group, SE, at the time Hurricane Ida struck New Orleans. R. Doc. 1-1. Plaintiff lived on one side of the structure and rented out the other side. After the storm, Plaintiff returned and found significant damage to her home, including a missing back wall, roof

1

damage, and water damage to all rooms on both sides of the "double." Plaintiff reported the claim to Chubb immediately and was assigned a claim number.

On September 3, 2021, Plaintiff alleges a retired adjuster from Florida, Glenn Willis, offered free "moisture readings" to residents in the neighborhood. Willis took 21 readings in the home evidencing high moisture levels. On September 5, 2021, Chubb sent its independent adjuster, Mike Weaver, to inspect the home for damages. Plaintiff and her tenant were present during the inspection. Plaintiff showed Weaver the moisture readings taken by Willis and emailed some of them to Weaver. After his inspection, Weaver allegedly told Plaintiff that the damages were severe and that her ceilings were going to fall. He predicted mold would begin forming in a few days and advised her to find another place to stay because the home was not habitable.

According to the petition, on or around September 17, 2021, Chubb forwarded a check in the amount of $7,228.27. There was no estimate included with the check. Plaintiff then began calling Weaver and Minuteman, an adjusting group for whom Weaver worked, seeking additional proceeds and an estimate. Plaintiff's agent also requested an estimate. On November 2, 2021, Chubb forwarded the estimate to the agent.  The estimate allowed for minimal roof repair but also found some damage to interior rooms. The estimate total was $13,988.97 (RCV) and $13,048.27 (ACV), which, after a deductible of $5,820.00, left a remainder of $7,228.27. [1]

Plaintiff alleges she continued to contact Chubb and Minuteman; eventually, she and the

---

[1] RCV is replacement cost value and ACV is actual cash value.

tenant moved out. She retained an attorney in November 2021 and sought a reinspection, among other things. Believing her home to be quickly deteriorating, despite a tarp on the roof, Plaintiff hired 911 Restoration to perform gutting and water mitigation services at the home. 911 Restoration took some 116 photographs of the damages before commencing work. Between December 22, 2021, and March 9, 2022, 911 Restoration performed mitigation and gutting services. Eventually, the contractor took some 2,318 photographs of the work performed.

Plaintiff invoked an appraisal on February 27, 2022. Chubb responded on April 4, 2022, and a joint inspection was conducted on May 19, 2022. Chubb on July 18, 2022, withdrew from the appraisal process and requested Plaintiff be examined under oath ("EUO"). Plaintiff testified that all estimates, not including the water mitigation and gutting, totalled over $266,550.20. Plaintiff testified these estimates were to put the home back as a single-family residence rather than a double. She attested to her many unresponsive calls to Chubb and Minuteman and her many expenses related to lost personal property and additional living expenses. She alleges she submitted to Chubb photos of the moisture readings, the roof invoice of $40,195.00, and the mitigation estimate. Plaintiff stated in her petition that she was seeking policy limits for structure, other structures, personal property, and additional living expenses. Plaintiff alleges Chubb ignored significant damage to the property, applied below-market pricing to the estimates, arbitrarily pre-set its pricing software to determine that all damaged materials were in "average" condition, applied an arbitrary depreciation to materials and labor, and underpriced the estimated damages using manipulated software.

3

Plaintiff filed suit against Chubb in state court, and Chubb removed the case to this court asserting diversity jurisdiction. Eventually, Chubb and Plaintiff filed these competing motions to exclude expert testimony to be offered by the other party. The Court will take the motions up separately.

**LAW AND ANALYSIS**

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for the court to consider in assessing reliability:

4

(1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. Nevertheless, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). Ultimately, the court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The court must then determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, that is, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[ ] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires the expert be properly qualified. In general, if there is some

5

reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (superseded in part by statute on other grounds as noted in *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020)). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can

offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

**PLAINTIFF'S MOTION IN LIMINE REGARDING GEORGE COTO, JR.**

Essentially, the dispute in this case concerns the extent of the actual damage to Plaintiff's property by the storm and whether the steps taken by Plaintiff to remediate that damage were justified and covered by the insurance policy. Plaintiff asserts Chubb hired George Coto, Jr., to provide an expert report to "review the documents from Mr. Glenn Willis and 911 Restoration regarding the mitigation at the above referenced property to determine if the assessment and remediation conducted was reasonable and appropriate according to industry guidelines and standards and would support the work performed by 911 Restoration at the residence." R. Doc. 45-2, p. 1. According to Defendant Chubb, Coto is a Senior Industrial Hygienist with EFI Global, Inc. R. Doc. 54. He has provided expert testimony in the field of industrial hygiene in numerous cases involving environmental hazards over the past four years. *Id.*

Although Chubb claims Plaintiff misrepresents the purpose of the Coto report, Chubb elsewhere states that the purpose of Coto's Report, produced in January 2024, is "to determine if the assessment and remediation conducted [by 911 Restoration] was reasonable and appropriate according to industry guidelines and standards and would support the work performed by 911 Restoration at the residence." R. Doc. 54, p. 1 (quoting Coto Report at p. 1). To that end, Mr. Coto reviewed "the documents from Mr. Glenn Willis and 911 Restoration regarding the mitigation" at the Property, both of which have been asserted by Plaintiff as support for her decision to gut the

Property in December 2021. *Id.*

Plaintiff contends Coto's testimony should be excluded as unreliable. She asserts Chubb limited Coto's access to relevant information to obtain a skewed report by not providing him with their own independent adjuster's report and the 132 photographs he had produced, as well as other information Coto admitted would have been relevant, such as interviews with witnesses who had first-hand knowledge of the damages. Plaintiff also asserts Chubb was given information that 911 Restoration had performed its mitigation work based solely on the inspection and the photographs of Glenn Willis, which she asserts was not true. Plaintiff next asserts that Coto had omitted a reference to wind-driven rain resulting from hurricane and tropical storms in his definition of Category 3 water infiltration.[2]  Thus, she contends that Coto's report makes it appear that such infiltration can occur only from flooding due to rising water from rivers and streams and seawater or groundwater, when it can also arise from wind-driven rain.

Chubb counters that Mr. Coto has never been excluded from testifying as an expert. Furthermore, Chubb points out, Plaintiff does not challenge his professional training, experience, and qualifications. Coto's report was intended to give his opinion of the sub-standard work performed by Plaintiff's mitigation team, Chubb asserts, relying on 911 Restoration and Glenn Willis because she claimed to rely on their advice as her basis for deciding to gut the property to its studs in December 2021. Chubb contends Plaintiff's arguments are erroneous, wrong, and false.

---

[2] Category 3 water is described as water containing toxins and other contaminants.

Ultimately, Chubb argues that the independent adjuster's report (prepared by Mike Weaver) is not relevant to the purpose of Coto's report because Plaintiff points to nothing in the Coto report that would have benefitted from review of the adjuster's report and because the adjuster's report played no role in 911 Restoration's assessment or Plaintiff's decision to gut the property in December of 2021.

Ultimately, Plaintiff's challenge to the admissibility of Coto's report and testimony is based on her belief that Coto should have considered other evidence and failed to do so, suggesting he may have been restricted intentionally by Chubb. Thus, she contends Coto's report is unreliable. However, her concerns regarding the evidence upon which Coto's opinions are based can be addressed through cross-examination and the presentation of countervailing expert testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). Accordingly, the Court will deny Plaintiff's Motion in Limine.

**DEFENDANT'S MOTION IN LIMINE REGARDING JEREMY BELK**

According to Defendant, one year after Hurricane Ida had struck New Orleans, after Plaintiff had devised architectural plans to convert her double to a single, and after she had gutted the property, Plaintiff's attorney contacted Jeremy Belk, a claims adjuster, to inspect the property and "to review the documents they sent [him] and give an assessment on the damages and write

an estimate to go back as a single and a double." R. Doc. 47-1, p. 1 (quoting Belk Deposition). Belk's inspection occurred in November of 2022, according to Defendant, and his report, dated December 18, 2023, provides an estimate to convert the property to a single, which had already commenced, and an estimate to return it to a double. Belk's report necessarily includes total interior renovations of the property because it had already been gutted to the studs. Both estimates were of replacement costs rather than actual cash value, as required under the policy. Nothing in Belk's report, Chubb asserts, attempts to connect the rebuild to damage from the hurricane. Furthermore, Chubb contends that, by the time Belk's report was prepared, the "repairs" to the property were largely complete and Belk made no comparison of his estimates to the actual invoices for the completed work.

Defendant asserts that Belk's opinions are unreliable, not based on a reliable methodology, and will not assist the jury. Defendant argues that the estimates are only of replacement value and do not account for depreciation and that Belk's opinions as to converting the property to a single are based on what others told him, mainly Plaintiff. Further, Defendant maintains Belk lacks the qualifications to opine on the linchpin of Plaintiff's basis for gutting the property, that is, that water intrusion through the property required it to be gutted to the studs. Defendant also requests that Belk be disqualified as a witness because he has a confidential contractual relationship with Chubb's third-party claims administrator, Minuteman Adjusters, Inc., for whom Mike Weaver had

adjusted the claim, and obtained confidential information from them.[3]

Mr. Belk has been working as an adjuster since 2005. According to his CV and deposition testimony, he has gone through extensive training at various times over his career, including with Worley Catastrophe Companies, State Farm, FEMA, and Minuteman. He has been an appraiser, umpire, damage consultant, and adjuster, as well as a loss consultant working with attorneys. He is a licensed adjuster in several states, including Louisiana since 2009, and has a number of certifications. During his deposition, he was questioned extensively about the evidence he relied upon to prepare his estimates. With regard to an opinion as to what Plaintiff was owed under the insurance policy, Mr. Belk stated he was asked to prepare a damage estimate and that he was not rendering an opinion under the policy. Doc. 56-17, p. 141. Similarly, with regard to the conversion of the double into a single, he prepared that estimate at the request of Plaintiff. *Id.*, pp. 141-42. In his deposition, Mr. Belk identified at length the evidence he relied on to prepare his estimates, admitting that he relied largely on what other people had done. *See generally id.*

As with Defendant's expert, Mr. Belk was asked to review evidence and materials prepared or supplied by other persons. His expertise is in adjusting, and his report is intended to shed light on whether the handling of the claim by Defendant and its adjuster was within industry standards.

---

[3] Defendant points to no actual exchange of confidential information, nor does it identify any such information in its brief. *See* R. Doc. 47-1, pp. 14-16. Instead, Defendant conjectures that "it is objectively reasonable for Chubb to conclude" that information was exchanged simply by the fact of their relationship. *Id.*, p. 14. During his deposition, Mr. Belk stated he spoke with Mike Weaver only once, during a settlement conference with lawyers present. Doc. 56-17, pp. 132-33.

Defendant's assertions of unreliability in Belk's methodology are more properly attacks on the weight to give his opinions, based as they are on evidence and materials provided by others. The Court is mindful that, as part of its gatekeeping duty, it must determine whether the testimony will assist the trier of fact in understanding the evidence. *Daubert* at 591. To that end, the expert testimony must be (1) reliable and (2) helpful. The Court finds Plaintiff has satisfied both prongs. The factfinder can then attribute the weight, if any, it desires to attribute to the testimony. Mr. Belk's testimony as an adjuster is not scientific in nature. "Testimony that is not scientific in nature is better judged by examining whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered." *Redding Linden Burr, Inc. v. King*, 2009 WL 277531, at *2 (S.D. Tex. Feb. 4, 2009) (citing Fed. R. Evid 702 and Kumho Tire. Co, 526 U.S. at 150–51 (1999)). So long as the expert's testimony is restricted to his area of expertise, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land, supra*, 80 F.3d at 1077. The Court will deny Defendant's Motion in Limine.

**CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion in Limine to Exclude the Testimony of George

Coto, Jr., R. Doc. 45, is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude Expert

Testimony of Plaintiff's Proposed Expert Jeremy Belk (R. Doc. 47) is DENIED.

New Orleans, Louisiana, this 27th day of September 2024.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE