UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEVEN MACNAIR | * | CIVIL ACTION |
| VERSUS | * | NO. 23-761 |
| CHUBB EUROPEAN GROUP SE | * | SECTION "T" (2) |

**ORDER AND REASONS**

Pending before me is Plaintiff Deven MacNair's Motion to Disqualify Counsel. ECF No. 173. Defendant Chubb European Group SE filed an Opposition Memorandum, and Plaintiff filed a Reply Memorandum. ECF Nos. 155, 156.

Having considered the record, evidence, the submissions and arguments of counsel, the applicable law, Plaintiff's Motion to Disqualify Counsel is DENIED for the reasons stated herein.

## I.    BACKGROUND

### A. Relevant Background

This insurance dispute arises from Hurricane Ida damage to Plaintiff's duplex. ECF No. 1-1. The Court detailed the relevant facts and posture of the case in its April 15, 2025, Order on Defendant's Motion to Disqualify Plaintiff's Counsel. *See* ECF No. 164 at 1-4 (Section I, Part A). Plaintiff seeks to disqualify opposing counsel based on the creation and contents of non-party contractor Dustin Fleiner's affidavit. ECF No. 46-16. Mr. Fleiner is a member of residential construction and remodeling company The Trainque Group, LLC a/k/a Trainque Group Construction ("TGC"), which Plaintiff consulted regarding a renovation to her property in May 2021. *Id.* ¶¶ 2-4.

On October 23, 2023, Defendant issued a subpoena duces tecum to TGC requesting production of, among other things, emails between it, meaning its "agents, representatives, employees, or any other entity or person acting or purporting to act on its or their behalf," and

1

Plaintiff pertaining to Plaintiff's duplex and/or Hurricane Ida damage to the duplex. ECF No. 173-4 at 1, 3, 5 (Item Nos. 1, 2). TGC produced three emails chains involving Fleiner dated October 15, 2021, January 28, 2022, and February 25, 2022. ECF No. 175-3 at 1. On November 20, 2023, Defendant's counsel William Kelly contacted Fleiner, requesting he further review his emails for records related to Plaintiff and/or the duplex and produce them in accordance with the subpoena, as Defendant had obtained additional responsive emails that listed him as a participant but not produced by TGC. *Id.* Fleiner obliged and produced additional emails. ECF Nos. 173-6 at 1; 173-7; 173-8. Defense counsel Kelly provided Fleiner with a draft affidavit for review and advised him that the affidavit's purpose was to authenticate and contextualize his texts and emails. ECF No. 179-1 at 1-2. The next day, Fleiner responded that the affidavit "look[ed] accurate" after reviewing it. *Id.* at 1. He requested no changes. ECF No. 136-4 at 68:5-8.

A few days later, Fleiner met with Kelly to sign the affidavit. *See* ECF No. 173-9 at 3-4. Fleiner again reviewed the affidavit in its entirety, without assistance, for 5-10 minutes and then signed it. ECF No. 136-4 at 70:2-24. He does not know if he possibly skimmed a portion of the affidavit, but confirmed that every statement in it is accurate. *Id.* at 70:25-71:5, 131:18-23.

### B. Pending Motion

Plaintiff contends that the affidavit contains false statements and is misleading due to omissions. ECF No. 173-1 at 1. On that basis, Plaintiff seeks to disqualify defense counsel (Kelly), asserting that he has made himself a necessary witness to her breach of contract and bad faith claims and created the appearance of impropriety by preparing a misleading affidavit and obtaining Fleiner's signature without counsel. *Id.* She argues that Kelly is a necessary witness to (1) whether the affidavit is accurate, (2) whether Fleiner intended to mislead the finder of fact, and (3) whether counsel's preparation of the affidavit constitutes bad faith. *Id.* at 12. Plaintiff argues that because

Kelly drafted the affidavit, only he can testify as to whether the statements and omissions were intentional acts committed by Fleiner or Defendant. *See id.* at 12-14. She argues that testimony is relevant to whether the Defendant acted in an arbitrary or capricious manner, or without probable cause, as well as to defeating Defendant's fraud defense. *Id.* at 12.

In Opposition, Defendant argues there is nothing false or misleading in the affidavit. ECF No. 179 at 9-10, 12-15. Defendant also argues there is nothing improper about Kelly preparing the affidavit for Fleiner's review and signature. *Id.* at 11-12 (citing *Resolution Trust Corp. v. Bright*, 6 F.3d 336 (5th Cir. 1993)). Defendant further argues that Fleiner, not Kelly, is the only witness who can testify as to the accuracy of his affidavit because the affidavit is based on his personal knowledge and only he can testify as to his intent. *Id.* at 16-17. Defendant further argues that whether Kelly's conduct constitutes bad faith is a legal question resolved by *Bright*. *Id.*

In Reply, Plaintiff reiterates her argument that Fleiner's affidavit contains false statements and is misleading due to omissions. *See* ECF No. 184 at 2-3, 5-6. She then argues that Defendant has an ongoing duty of good faith and Defendant beached that duty when its attorney drafted a misleading affidavit to assist in Defendant's denial of insurance benefits to her. *Id.* at 7-8.

## II.   APPLICABLE LAW

### A. Motion to Disqualify Standard

A motion to disqualify is a substantive motion affecting the rights of the parties and is determined by applying standards developed under federal law.[1] Disqualification cases are governed by state and national ethical standards adopted by the court.[2] When considering attorney disqualification, the court considers (1) the local rules in the district; (2) the American Bar

---

[1] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).
[2] *F.D.I.C.*, 50 F.3d at 1311–12 (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)).

Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct.[3] Local and national ethical canons are useful guides, but they are not controlling.[4]

Disqualification rules are not mechanically applied.[5] "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[6] Applying an exacting standard for a motion to disqualify is necessary to protect a party's right to counsel of choice and to discourage the use of such motions as a trial tactic. The court must be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, such as the right of a party to counsel of choice and an attorney's right to freely practice law.[7] Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed cavalierly[8] or without careful consideration.[9]

In the disqualification context, the "appearance of impropriety" doctrine reflects the notion that even ethical conduct may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession.[10] The court must balance the likelihood of public suspicion against a party's right to counsel of choice:

> "[T]he disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice." In order to disqualify an attorney under the appearance of impropriety doctrine, "a court must . . . find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." "A

---

[3] *Id.* at 1312; *Horaist v. Dr.'s Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).
[4] *F.D.I.C.*, 50 F.3d at 1314.
[5] *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir. 1989); *Church of Scientology of Cal. v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980).
[6] *F.D.I.C.*, 50 F.3d at 1314.
[7] *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)); *see also F.D.I.C.*, 50 F.3d at 1313 (citing *Woods*, 537 F.2d at 813).
[8] *MMR Constr., Inc. v. JB Grp. of La., LLC*, No. 22-267, 2024 WL 5155878, at *17 (M.D. La. Dec. 18, 2024).
[9] *F.D.I.C.*, 50 F.3d at 1313.
[10] *Woods*, 537 F.2d at 813.

disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing." Therefore, "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[11]

An attorney's conduct is not, however, governed by standards that can be imputed only to the most cynical members of the public.[12] Rather, there must be a "reasonable possibility that some identifiable impropriety actually occurred."[13] Thus, "[a]n attorney may be disqualified only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice."[14]

### B. Rule 3.7

Rule 3.7 of the Louisiana Rules of Professional Conduct states in pertinent part:

(a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
   (1)  The testimony relates to an uncontested issue;
   (2) The testimony relates to the nature and value of legal services rendered in the case; or
   (3) Disqualification of the lawyer would work substantial hardship on the client.[15]

That rule is adopted by this Court as one of its own rules of conduct,[16] and it is identical to Rule 3.7 of the Model Rules.[17]

Rule 3.7 "serves two distinct purposes: protecting the client and protecting the integrity of

---

[11] *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F. Supp. 3d 530, 541 (E.D. La. 2021) (Morgan, J.) (citations omitted).
[12] *Id.* (quoting *Woods*, 537 F.2d at 813).
[13] *Id.* (quoting *F.D.I.C.*, 50 F.3d at 1316; and citing *Woods*, 537 F.2d at 813).
[14] *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (quoting *Woods*, 537 F.2d at 812-13).
[15] LA. RULES OF PRO. CONDUCT r. 3.7.
[16] E.D. La. L.R. 83.2.3.
[17] *Compare* LA. RULES OF PRO. CONDUCT r. 3.7, *with* MODEL RULES OF PRO. CONDUCT r. 3.7 (AM. BAR ASS'N 2025). *See CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2010 WL 2773116, at *2 & nn. 12-13 (E.D. La. July 9, 2010) (Africk, J.) (finding LRPC 1.7, 1.9, and 3.7 identical to Model Rules 1.7, 1.9, and 3.7 (citing *Lange v. Orleans Levee Dist.*, No. 97-987, 1997 WL 668216, at *2 (E.D. La. Oct. 23, 1997) (Clement, J.))); *see also W. Bankers Cap., Inc. v. Kirton McConkie, P.C.*, No. 23-5124, 2025 WL 522542, at *4 (E.D. La. Feb. 18, 2025) (Long, J.).

5

the court proceeding."[18] It protects the client from a potential conflict of interest which would occur when an attorney is forced to offer testimony that materially differs from the testimony offered by his client.[19] Rule 3.7 protects the integrity of judicial proceedings as well, because "when an attorney is placed in both positions the Court runs the risk that a jury will assign too much, or possibly too little, weight to the lawyer's testimony."[20] Because its application is explicitly "limited to those circumstances where the lawyer is likely to be a necessary witness at a trial," Rule 3.7, as well as Model Rule 3.7, "does not apply to pretrial proceedings."[21] "A necessary witness is one whose testimony is relevant, material, and unobtainable elsewhere."[22] If the court determines that "a witness is not necessary, it need not engage in policy considerations such as the appearance of impropriety."[23]

### III. ANALYSIS

Plaintiff identifies three issues for which she contends Kelly is a necessary witness: (1) whether Fleiner's affidavit is accurate, (2) whether Fleiner intended to mislead the finder of fact, and (3) whether Kelly's preparation of the affidavit constitutes bad faith. ECF No. 173-1 at 12. Contrary to Plaintiff's assertion, Fleiner is available to address issues (1) and (2), and thus, he is another source available to testify to those issues. Indeed, Fleiner has already testified about the accuracy of his affidavit in his sworn deposition. *See* ECF No. 136-4 at 131:18-132:10. Further,

---

[18] *Spotted Cat, LLC v. Bass*, No. 13-6100, 2014 WL 4072024, at *3 (E.D. La. Aug. 18, 2014) (Milazzo, J.) (citing *F.D.I.C.*, 50 F.3d at 1315).
[19] *Id.* (citing MODEL RULES OF PRO. CONDUCT r. 3.7 cmt. 6 (2011)).
[20] *Id.* (citing cases); *see also* MODEL RULES OF PRO. CONDUCT r. 3.7 cmt. 3.
[21] *CEF Funding*, 2010 WL 2773116, at *2 (citing cases).
[22] *Treece*, 559 F. Supp. 3d at 536 (quoting *Painter v. Suire*, No. 12-511, 2014 WL 3858510, at *2 (M.D. La. Aug. 5, 2014)); *accord. Spotted Cat*, 2014 WL 4072024, at *3 (quoting *CEF Funding*, 2010 WL 2773116, at *2 n.15); *see also United States v. Starnes*, 157 F. App'x 687, 693-94 (5th Cir. 2005) ("A lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source." (citing *Horaist*, 255 F.3d at 267)).
[23] *Walker v. Beaumont Indep. Sch. Dist.*, No. 15-379, 2015 WL 12803456, at *4 (E.D. Tex. Dec. 2, 2015) (citing *Horaist*, 255 F.3d at 267 ("Because Toce is not a necessary witness, we need not reach the question whether the substantial hardship to Horaist outweighs the appearance of impropriety and other policy considerations.")).

Fleiner has the personal knowledge to testify as to his intent in executing the affidavit. Kelly would have no personal knowledge as to Fleiner's intent, and even if Kelly were to testify on these issues, his testimony would be cumulative of Fleiner's testimony. As such, Kelly is not a necessary witness under Rule 3.7 as to the first two issues raised by Plaintiff.[24]

Plaintiff also posits that Kelly's testimony is relevant to establish her bad faith claim, arguing that Defendant's post-litigation conduct may support a finding of bad faith under Louisiana's penalty statutes. Although the Fifth Circuit reversed sanctions against an attorney for "bad faith" in drafting an affidavit in *Bright*,[25] the court did so in the context of sanctions based on the court's inherent powers, not breach of an insurer's duty of good faith under Louisiana's penalty statutes. Here, Plaintiff is not seeking sanctions for Kelly's alleged bad faith in drafting the affidavit. Rather, she argues that his conduct is imputed to the Defendant and is evidence of Defendant's post-litigation breach its duty of good faith. *See* ECF No. 173-1 at 11-12 (quoting LA. REV. STAT. § 22:1892(I)(2)(a)-(e)).

Louisiana's penalty statutes, LA. REV. STAT. §§ 22:1892, 22:1973,[26] "provide remedies to

---

[24] *Horaist*, 255 F.3d at 267.

[25] *Bright*, 6 F.3d at 340. The trial court sanctioned the attorney because it found he included statements in draft affidavits that were not previously discussed with the witness and aggressively attempted to persuade the witness to agree with that factual version, which the court described as manufacturing evidence. After noting that a "specific finding that the attorney acted in 'bad faith'" was a threshold requirement for sanctions based on the court's inherent powers, the Fifth Circuit held that placing statements in a draft affidavit that have not been previously discussed with a witness does not automatically constitute bad faith. *Id.* at 340-41 (citations omitted).

[26] As of July 1, 2024, § 22:1973 was repealed and § 22:1892 was significantly amended. *Cambridge Rental Props., LLC v. State Farm Fire & Cas. Co.*, No. 23-6169, 2025 WL 1676742, at *4 n.45 (E.D. La. June 13, 2025) (Vitter, C.J.) (citing Act No. 3 of the 2024 Regular Session, Senate Bill No. 232). In Louisiana, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." LA. CIV. CODE art. 6; *see Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1557 (La. 2001). Multiple district courts sitting in Louisiana have found there was no legislative expression in the Act to make it retroactively applicable and made *Erie* guesses that § 22:1973's repeal and § 22:1982's amendments apply prospectively. *Cambridge Rental Props.*, 2025 WL 1676742, at *4 n.4 (citing *Simmons v. State Farm Fire & Cas. Co.*, 771 F. Supp. 3d 835, 839 n.27 (M.D. La. 2025); *Gentilly, LLC v. State Farm Fire & Cas. Co.*, No. 23-262, 2024 WL 5246606, at *4 n.67 (E.D. La. Dec. 30, 2024) (Vance, J.)). Because the filing of this case and its removal based on diversity jurisdiction occurred in 2023, § 22:1973 and the prior version of § 22:1982 are the substantive law for the issue raised by Plaintiff. ECF Nos. 1, 1-1; *see Cambridge Rental Props.*, 2025 WL 1676742, at *4 n.4 (applying pre-July 1, 2024, versions of §§ 22:1973 and 22:1892); *Simmons*, 771 F. Supp. 3d at 839 n.27 (same); *Gentilly*, 2024 WL 5246606, at *4 n.67 (same); *Duplantis v. Allied Tr. Ins. Co.*, No. 23-7141, 2025 WL 1927571, at *3 (E.D. La. July 14, 2025) (Vance, J.) ("When

insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed."[27] The statutes prohibit virtually identical conduct, with the primary difference being the time period for payment of claims.[28] Both "are penal in nature and must be strictly construed."[29] Therefore, the court must not "read requirements into the statute[s] outside of [their] plain language."[30] Both statutes require "satisfactory proof of loss," which is proof that is "sufficient to fully apprise the insurer of the insured's claims."[31] The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse."[32] Both phrases describe an insurer whose willful refusal to pay a claim is not based on a good-faith defense."[33] And whether "a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action."[34]

Under § 22:1892, a claimant is entitled to penalties if, after satisfactory proof of loss the

---

jurisdiction is based on diversity, the Court applies the substantive law of the forum state." (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014))). Plaintiff's reliance on the current version of § 22:1982 is thus misplaced. ECF No. 173-1 at 11 & nn.11-12 (quoting current version of § 22:1892).
[27] *Gentilly*, 2024 WL 5246606, at *4 (quoting *Bourg v. Safe Ins. Co. of La.*, 300 So. 3d 881, 888-89 (La. App. 1 Cir. 2020) (quoting *Lee v. Sapp*, 234 So. 3d 122, 128 (La. App. 4 Cir. 2017))).
[28] *McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.*, No. 18-1380, 2023 WL 2749146, at *3 (E.D. La. Mar. 31, 2023) (Guidry, J.) (quoting *Johnson v. State Farm Mut. Auto. Ins. Co.*, No. 11-1991, 2012 WL 1745497, at *4 (E.D. La. May 16, 2012) (Africk, J.) (citing *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 803 (5th Cir. 2009))); *see also Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003) (describing relation between LA. REV. STAT. §§ 22:658(A)(1) and 22:1220(B)(5)). Sections 22:658 and 22:1220 were renumbered to §§ 22:1892 and 22:1973, respectively. *Guillory*, 16 So. 3d at 1111 n.5.
[29] *Reed*, 857 So. 2d at 1020 (citing *Hart v. Allstate Ins. Co.*, 437 So. 2d 823, 827 (La. 1973)).
[30] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 787 F.3d 276, 288 n.34 (5th Cir. 2015) (citing *State v. Bedford*, 838 So. 2d 758, 760 (La. 2003) ("[T]he legislature is presumed knowledge of well-settled principles of statutory construction.")).
[31] *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 2008) (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985)); *see Katie Realty, Ltd. v. La. Citizens Prop. Ins. Corp.*, 100 So. 3d 324, 331 (La. 2012) ("[P]roof of loss necessarily means proof sufficient to establish the amount due on an insurance claim."). Proof of loss is a "flexible requirement to advise an insurer of the facts of the claim"; the form of it and the manner used to provide it to the insurer is immaterial. *La. Bag Co.*, 999 So. 2d at 1119 (quoting *Servier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986)).
[32] *Id.* at 1114 (quoting *Reed*, 857 So. 2d at 1021).
[33] *Id.* (citing *Reed*, 857 So. 2d at 1021).
[34] *Guillory*, 16 So. 3d at 1127; *First United Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 427 (5th Cir. 2024).

insurer fails to pay a claim within thirty days, and the failure is deemed "arbitrary, capricious, or without probable cause."[35] To establish a cause of action under § 22:1982, a claimant must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[36]

Section 22:1973 imposes a duty of good faith and fair dealing on an insurer to "adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."[37] "The statute subjects the insurer to damages and additional penalty if (1) it receives satisfactory proof of loss, (2) it fails to pay a claim within sixty days after receiving the proof, and (3) the failure was arbitrary, capricious, or without probable cause."[38] Section 22:1973(A) provides the insured with a cause of action for breach of an "insurer's general duties," that is, the affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.[39] Thus, an insured's claim for breach of the implied covenant of good faith and fair dealing is not limited to the prohibited acts listed in § 22:1973(B).[40]

Louisiana courts have recognized the duty of good faith and fair dealing extends to the insurer's conduct throughout litigation,[41] as have federal courts.[42] Evidently relying on this line

---

[35] *Gentilly*, 2024 WL 5246606, at *4 (citing § 22:1892(B)(1)(a) (2023)).
[36] *Id.* (quoting *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009)); *McDonnel Grp.*, 2023 WL 2749146, at *3 (quoting same).
[37] *Gentilly*, 2024 WL 5246606, at *4 (quoting § 22:1973(A) (2023)).
[38] *Id.* (citing § 22:1973(B)-(C) (2023))
[39] *Kelly v. State Farm Fire & Cas. Co.*, 169 So. 3d 328, 335-36 (La. 2015).
[40] *Century Sur. Co. v. Blevins*, 799 F.3d 366, 371 (5th Cir. 2015) (quoting *Kelly*, 169 So. at 336 (quoting *Stanley v. Trinchard*, 500 F.3d 411, 427 (5th Cir. 2007))). For third parties, it is the opposite. *See id.* (citing *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 188 (La. 1997)).
[41] *Sher v. Lafayette Ins. Co.*, 998 So. 2d 186, 199 (La. 2008) ("[A]n insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period."); *Harris v. Fotenot*, 606 So. 2d 72, 74 (La. App. 3 Cir. 1992) (finding former Sections 22:1220 and 22:658 apply to post-litigation conduct).
[42] *Stone v. Amador*, No. 20-16, 2020 WL 6292819, at *5 (M.D. La. Oct. 27, 2020) (citing *Kimble v. State Farm Fire & Cas. Co.*, No. 09-1798, 2011 WL 1637142, at *5 (W.D. La. Apr. 29, 2011); *Slade v. Progressive Sec. Ins. Co.*,

of cases, Plaintiff argues that Defendant's attorney's drafting of an affidavit in this case with alleged false statements and omissions constitutes bad faith under §§ 22:1973 and 22:1982. *See* ECF No. 184 at 8 ("[T]he misleading affidavit is a capricious action taken by [Defendant] to assist in the denial of benefits to [Plaintiff] without probable cause.").[43] Initially, Louisiana generally precludes a party from asserting claims against an opposing party's counsel, and the Court's disciplinary rules are designed to address alleged misconduct by counsel.[44] Moreover, while courts have recognized that an insurer's continued post-litigation refusal to pay a claim may suffice to establish an arbitrary and capricious failure to pay under Louisiana's penalty statutes,[45] Plaintiff cites no case (and the court has located none) to suggest that a plaintiff's disagreement with the manner in which opposing counsel defends the litigation matter or otherwise effectuates his

---

No. 11-2164, 2013 WL 12182957, at *8 (W.D. La. Feb. 4, 2013), *R.&R. adopted*, 2013 WL 12364259 (W.D. La. Mar. 5, 2013)); *Conlee v. Fireman's Fund Ins. Co.*, No. 07-660, 2007 WL 2071860, at *3 (E.D. La. 2007) (Barbier, J.); *Morris v. State Farm Fire & Cas. Co.*, 740 F. Supp. 3d 491, 507-08 (W.D. La. 2024). *But see Premium Fin. Co. v. Emps. Reinsurance Corp.*, 761 F. Supp. 450, 452 (W.D. La. 1991) ("Applying [former Section 22:1220] under consideration to post-litigation activities would lead to an absurd result. The absurd result is to expose all litigation with insurers on the main demand to protracted collateral litigation concerning the insurer's post-filing negotiations, as colored by attorney advice, issue development, and court rulings. The resulting litigation explosion would thwart the statutory goal of quick resolution of disputed claims and would impede just and reasonable post-filing negotiations."); *Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. 06-7232, 2007 WL 4144944, at *3 (E.D. La. Nov. 20, 2007) (rejecting argument that former Section 22:658 "applies to actions taken by an insurer once the litigation has commenced").

[43] Because Plaintiff argues Defendant breached the analogous provision of the current but not applicable law, § 22:1892(I)(2)(e), the Court construes the argument that Defendant breached these provisions of the former, applicable law. *See* ECF No. 173-1 at 11-12, 11 nn.11-12 (quoting current LA. REV. STAT. § 22:1892(I)(2)(a)-(e) and arguing Kelly's "testimony is relevant to whether the defendant acted in an arbitrary or capricious manner, or without probable cause"); *see also* ECF No. 1-1 ¶¶ 93, 98 (Plaintiff's allegations in the Complaint appearing to assert bad faith claims under Sections 22:1892 and 22:1973 and alleging that Defendants actions were "arbitrary, capricious, and without probable cause as those terms are defined under Louisiana law"). Plaintiff did not argue that Kelly's testimony would be relevant to Defendant's alleged breach of § 22:1973(A) or (B)(1).

[44] *Cf. Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994) ("Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf.").

[45] *See Morris*, 740 F. Supp. 3d at 507-508 (finding genuine dispute as to whether insurer's acted arbitrary, capricious, or without probable cause due to its handling of proofs of loss received after litigation commenced); *Naz L.L.C. v. Mt. Hawley Ins. Co.*, No. 21-1893, 2023 WL 2527052, at *4-5 (E.D. La. Mar. 15, 2023) (Lemelle, J.) (denying only in part Defendant's motion for partial summary judgment because, while Plaintiff provide no evidence that Defendant's refusal to pay pre-litigation was arbitrary or capricious, her counsel's email containing an estimate and reports to Defendant's counsel during litigation and Defendant's continued refusal to pay raised genuine issues of fact); *Kimble*, 2011 WL 1637142, at *4-6 (finding Plaintiffs' bad faith practices claims based on Defendant's refusal to pay after receiving proof of loss during the litigation survives Defendant's motion for summary judgment).

professional duties to his client in defense of a claim (e.g., takes a deposition, seeks discovery, etc.) may establish a claim for statutory penalties against the insurer.

Albeit brief, Plaintiff also appears to claim Kelly is a necessary witness to defeating Defendant's "fraud defense" due to his alleged misrepresentations in Fleiner's affidavit. ECF No. 173-1 at 12. Defendant has six fraud defenses. ECF No. 84 at 1-6. Plaintiff makes no attempt to explain which of the misrepresentations she alleges are connected to which defense and how Kelly's testimony on that misrepresentation is relevant to defeating the defense. Further, the affidavit is hearsay and thus inadmissible at trial. During trial, the affiant Fleiner will presumably be called to testify, at which time he will be subject to direct and cross-examination. Based on the admissible evidence at trial, the jury will determine whether Defendant has established its fraud defense or not. Whatever was or was not included in the affidavit has absolutely no impact on whether Defendant succeeds or fails in establishing any fraud defense. Thus, Kelly's drafting of an affidavit (inadmissible at trial) does not render him a necessary witness in relation to any fraud defense.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion to Disqualify Counsel is DENIED WITHOUT PREJUDICE.

New Orleans, Louisiana, this \_\_22nd\_\_ day of July, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

11